Filed 2/23/24  P. v. Baker CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BOBBY DARREN BAKER,<br><br>    Defendant and Appellant. | F086191<br><br>(Super. Ct. No. VCF295267)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Hill, P. J., Detjen, J. and Meehan, J.

Defendant Bobby Darren Baker filed a petition for resentencing pursuant to former Penal Code[1] section 1170.95 (now section 1172.6).  The trial court denied the petition, finding he failed to establish a prima facie claim for relief.  On appeal, defendant argues "the trial court erred by concluding that [he] had failed to establish a prima facie case."  (Capitalization omitted.)  Specifically, he contends "the language of the aiding and abetting instructions, combined with the second degree murder instruction, permitted the jury to find him guilty based on imputing the malice of the shooter rather than finding [he] personally harbored malice."

We find the jury instructions permitted a conviction based on an impermissible theory of imputed malice.  Accordingly, we reverse the order.

## BACKGROUND

In 2014, defendant was convicted of second degree murder (§ 187, subd. (a) [count 1]) and gang conspiracy (§ 182.5 [count 2]).  With respect to count 1, the jury found true the allegations he committed the offense for the benefit of, at the direction of, or in association with a gang (§ 186.22, subd. (b)) and a principal personally and intentionally discharged a firearm and proximately caused the victim's death (§ 12022.53, subds. (d), (e)(1)).  With respect to counts 1 and 2, the jury found not true the allegation defendant personally and intentionally discharged a firearm and proximately caused the victim's death (§ 12022.53, subd. (d)).  The trial court imposed an aggregate sentence of 40 years to life:  15 years to life on count 1 plus 25 years to life for the firearm enhancement.  The court stayed execution of the gang enhancement on count 1 and punishment on count 2.[2]

---

[1] Unless otherwise indicated, subsequent statutory citations refer to the Penal Code.

[2] On April 13, 2018, we conditionally reversed the judgment and remanded the case to the trial court with instructions to conduct a juvenile transfer hearing.  (*People v. Baker* (Apr. 13, 2018, F071120) [nonpub. opn.].)  On July 16, 2020, following said hearing, the trial court granted the motion to transfer the matter to adult criminal court.

2.

On December 22, 2022, defendant filed a petition for resentencing pursuant to then-section 1170.95.  He marked the following checkboxes:

"1.     A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.  [Citation.]

"2.     I was convicted of **murder**, **attempted murder**, or **manslaughter** following a trial or I accepted a plea offer in lieu of a trial at which I could have been convicted of murder or attempted murder.  [Citation.]

"3.     I could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019.  [Citation.]"

At an April 20, 2023 hearing, the prosecution argued "the jury must have convicted the defendant based on intent to kill" because "[t]he jury was not instructed on natural and probable consequences, nor felony murder."  Thereafter, the trial court ruled:

"My ruling is to deny the defendant's petition for resentencing, finding lack of a prima facie case.

"Here the jury was not instructed on the natural and probable consequences as it applies to either first or second degree murder, nor the Felony Murder Rule.  The instructions that were given were solely on direct aiding and abetting, and that defendant intended to facilitate the murder.

"Furthermore, a review of the prior appellate opinion in this matter shows that the Court found the jury was properly instructed on the aiding and abetting principles, and the appellate court there found the evidence was substantial, that the defendant was aware of the shooter's purpose and intended to encourage and facilitate the shooting.

"Now, I say that because the Court knows that its burden is much more than substantial evidence.  But in making the finding on a prima facie case, the law of the case is such that clearly, there can be no application of a natural and probable consequence or Felony Murder Rule."

3.

**DISCUSSION**

## I.  Section 1172.6

"Effective January 1, 2019, the Legislature passed Senate Bill [No.] 1437 [(2017–2018 Reg. Sess.)] 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*), quoting Stats. 2018, ch. 1015, § 1, subd. (f).)  "Through the passage of Senate Bill [No.] 1437 the Legislature effectively eliminated the natural and probable consequences doctrine as it relates to murder convictions, and reduced the scope of the felony-murder rule." (*People v. Prado* (2020) 49 Cal.App.5th 480, 487.)  "To effectuate these changes, the Legislature amended sections 188 and 189 . . . ." (*Ibid.*; see §§ 188, subd. (a)(3) ["Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."]; 189, subd. (e) ["A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."].)  Senate Bill No. 1437 (2017–2018 Reg. Sess.) also "added [former] section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis, supra*, at p. 959.)

4.

"In 2021, the Legislature passed Senate Bill No. 775 (2021–2022 Reg. Sess.) . . . , amending former section 1170.95 effective January 1, 2022.  In addition to providing relief for those convicted of felony murder or [murder] under the natural probable consequences doctrine, the amended statute extended relief to defendants convicted under any 'other theory under which malice is imputed to a person based solely on that person's participation in a crime.'  [Citation.]  The amended statute also expanded the categories of offenses eligible for relief to include attempted murder and manslaughter as well as murder.  [Citation.]"  (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1173–1174 (*Lee*).)

"Effective June 30, 2022, the Legislature renumbered [former] section 1170.95 to section 1172.6 with no change in text."  (*People v. Gonzalez* (2023) 87 Cal.App.5th 869, 871, fn. 1, citing Stats. 2022, ch. 58, § 10; accord, *People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.)

A petitioner is entitled to relief under section 1172.6 if three conditions are satisfied:  (1) the prosecution "proceed[ed] under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine" (§ 1172.6, subd. (a)(1)); (2) "[t]he petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder" (*id.*, subd. (a)(2)); and (3) "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019" (*id.*, subd. (a)(3)). (Accord, *People v. Watson* (2021) 64 Cal.App.5th 474, 482 [former § 1170.95].)

"After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).)  "If a petitioner makes a prima facie showing of relief under section 1172.6—that is, a showing that the petitioner was convicted of murder, attempted murder,

5.

or manslaughter under a theory no longer valid under the amended Penal Code—the resentencing court must issue an order to show cause for an evidentiary hearing." (*Lee*, *supra*, 95 Cal.App.5th at p. 1174; accord, § 1172.6, subds. (c)–(d).) At the evidentiary hearing, "the prosecution must prove beyond a reasonable doubt that the petitioner remains guilty of murder or attempted murder despite the amendments to sections 188 and 189." (*Lee*, *supra*, at p. 1174.)

"[T]he prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. . . ." ' [Citation.]" (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Ibid.*) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id.* at p. 972; see *People v. Davenport* (2021) 71 Cal.App.5th 476, 481 ["The court's authority to summarily deny a petition is thus limited to 'readily ascertainable facts' taken from the record of conviction . . . ."].) Moreover, " '[a] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]" (*Lewis*, *supra*, at p. 971.) " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]" (*Ibid.*)

"The contents of the record of conviction defeat a prima facie showing when the record shows as a matter of law that the petitioner is not eligible for relief." (*People v. Swanson* (2020) 57 Cal.App.5th 604, 612.) "A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding,

weighing of evidence, or credibility determinations, that (1) the petitioner was the actual killer, or (2) the petitioner was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree, [or] (3) the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life, or (4) the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

## II.    Analysis

### a. *Standard of review*

"We review de novo an order denying a section 1172.6 petition at the prima facie review stage." (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170.)

### b. *Jury instructions*

The trial court issued the following instructions (among others):

> **"[CALCRIM No.] 400.  Aiding and Abetting:  General Principles**
>
> "A person may be guilty of a crime in two ways.  One, he or she may have directly committed the crime.  I will call that person the perpetrator.  Two, he or she may have aided and abetted a perpetrator, who directly committed the crime.  A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator.
>
> **"[CALCRIM No.] 401.  Aiding and Abetting:  Intended Crimes**
>
> "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:
>
> > "1.    The perpetrator committed the crime;
> >
> > "2.    The defendant knew that the perpetrator intended to commit the crime;
> >
> > "3.    Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;
> >
> > "AND

7.

"4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.

"Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.

"If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor.

"If you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor. However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor. [¶] . . . [¶]

### "[CALCRIM No.] 520. First or Second Degree Murder With Malice Aforethought (Pen. Code, § 187)

"The defendant is charged with murder.

"To prove that the defendant is guilty of this crime, the People must prove that:

> "1. The defendant committed an act that caused the death of another person;

> "AND

> "2. When the defendant acted, he had a state of mind called malice aforethought.

"There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder.

"The defendant acted with *express malice* if he unlawfully intended to kill.

"The defendant acted with *implied malice* if:

> "1. He intentionally committed an act;

> "2. The natural and probable consequences of the act were dangerous to human life;

8.

"3.    At the time he acted, he knew his act was dangerous to human life;

"AND

"4.    He deliberately acted with conscious disregard for human life.

"Malice aforethought does not require hatred or ill will toward the victim. It is a mental state that must be formed before the act that causes death is committed.  It does not require deliberation or the passage of any particular period of time.

"If you decide that the defendant committed murder, it is murder of the second degree, unless the People have proved beyond a reasonable doubt that it is murder of the first degree as defined in CALCRIM No. 521."

c.  *Whether defendant established a prima facie case for relief*

" '[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea.  [Citation.]  In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act.  For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act.  Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering act, not the result of the act.  The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life, and acting in conscious disregard for human life.' [Citations.]"  (*People v. Reyes* (2023) 14 Cal.5th 981, 990–991, italics omitted.)  "Direct aiding and abetting an implied malice murder remains a valid theory after the amendments of Senate Bill[ Nos.] 1437 and 775."  (*People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1263 (*Maldonado*).)

Defendant asserts "[t]he combination of CALCRIM No[s]. 401 and 520 . . . permit[ted] the jury to find [him] guilty of second degree murder if he intended to aid and abet an act that could cause death despite [him] not personally harboring the intent of

9.

implied malice." We agree. Under CALCRIM No. 401, a person "aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." (Italics omitted; accord, *Maldonado, supra*, 87 Cal.App.5th at p. 1266.) However, under CALCRIM No. 520, a direct perpetrator of second degree murder "need not act with the unlawful intent of causing death." (*People v. Langi* (2022) 73 Cal.App.5th 972, 982 (*Langi*); accord, *Maldonado, supra*, at p. 1265.) While the direct perpetrator must have "intentionally committed an act," "kn[own] his act was dangerous to human life," and "deliberately acted with conscious disregard for human life" (CALCRIM No. 520), "his [unlawful] purpose may have been only to strike or to injure . . . the victim" (*Langi, supra*, 73 Cal.App.5th at p. 982). "Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill. If the perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent." (*Langi, supra*, at pp. 982–983.) Moreover, although CALCRIM No. 520 states that the perpetrator must have acted with conscious disregard for human life, CALCRIM No. 401 does not include the same requirement. (Cf. *Langi*, at p. 983.) Therefore, the jury could have construed these instructions so as "to conclude that, to be guilty as an aider and abettor of second degree murder, [defendant] need only have intended to encourage the perpetrator's intentional act . . . whether or not [he] intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Ibid.*, fn. omitted.)

"The instructions should have explained that, to be guilty as a direct aider and abettor of second degree murder, an accomplice must have acted with the mental state of implied malice. [Citation.] More precisely, . . . the accomplice must have aided the perpetrator's commission of the life-endangering act while 'personally harbor[ing]' the mental state of implied malice. [Citation.]" (*Langi, supra*, 73 Cal.App.5th at p. 983.)

10.

CALCRIM No. 401, however, "was inadequate as applied to the crime of second degree murder because it did not clarify that an accomplice must personally harbor that mental state of implied malice." (*Langi*, at p. 983; see *Maldonado*, *supra*, 87 Cal.App.5th at p. 1265 [CALCRIM No. 401 " 'not tailored for' " aiding and abetting implied malice murder].)[3]

"We emphasize the jury was not required to construe the instructions in [the aforementioned] manner." (*Maldonado*, *supra*, 87 Cal.App.5th at p. 1266, italics omitted.) Nonetheless, "[t]he ultimate question before us is whether ' "the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the [section 1172.6] petition.' " ' [Citation.] Only '[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief' may the trial court dismiss the petition. [Citation.]" (*Id.* at p. 1269, italics omitted.)[4] Here, given the ambiguity of the jury instructions, we cannot say the record before us conclusively establishes defendant is ineligible for relief.

We conclude defendant made a prima facie showing of relief under section 1172.6, i.e., he was convicted of murder based on a theory under which malice was imputed to him based solely on his participation in a crime. "Accordingly, 'an evidentiary hearing is required. At that hearing, the court may find that [defendant] was . . . an aider and abettor who facilitated the killing with personal disregard for human life, in which case his

---

[3] The Attorney General cites *People v. Flores*, *supra*, 96 Cal.App.5th 1164 for the proposition we "should not entertain [defendant's] instructional error claim in the section 1172.6 context." That case is inapposite because it involved provocative act murder instructions, which—in contrast to the instructions in *Langi* and *Maldonado*—"presented no such possibility for imputing malice." (*Id.* at p. 1174.)

[4] By contrast, the Attorney General maintains "the appropriate standard asks whether there is a *reasonable likelihood* the jury understood the instructions as allowing a conviction under the prohibited theory." This argument, which was raised for the first time in a petition for rehearing, is forfeited. (*Maldonado*, *supra*, 87 Cal.App.5th at p. 1268.)

petition will be denied.  If the prosecution fails to prove [this], he will be entitled to relief.'  [Citation.]"  (*Maldonado*, *supra*, 87 Cal.App.5th at p. 1269.)

## DISPOSITION

The order denying defendant's petition for resentencing is reversed.  The matter is remanded with directions to issue an order to show cause and hold an evidentiary hearing.